124 So.2d 753 (1960)
PAN AMERICAN DISTRIBUTING COMPANY, a corporation, Appellant,
v.
SAV-A-STOP, INCORPORATED, a corporation, Appellee.
No. C-10.
District Court of Appeal of Florida. First District.
December 1, 1960.
Rehearing Denied December 13, 1960.
*754 Greenfield & Stein, Miami, for appellant.
Botts, Mahoney, Whitehead, Ramsaur & Hadlow, Jacksonville, for appellee.
CARROLL, DONALD K., Judge.
The appellant, the defendant below, has appealed from a summary judgment entered against it by the Civil Court of Record of Duval County, ruling for the plaintiff on both its complaint and the defendant's counterclaim. The only question raised on this appeal is as to the propriety of this ruling on the counterclaim.
According to the evidence before the court at the hearing on the plaintiff's motion for a summary judgment: Beginning about April, 1956, the plaintiff, a corporation operating super markets, began purchasing phonograph records for resale from the defendant, a record distributor, on a guaranteed sales basis, the defendant agreeing to give to the plaintiff credit upon the return to it of unsold records purchased from it by the plaintiff. The parties did business under this agreement for over two years. On June 8, 1958, the defendant, through its president, Marvin Lieber, wrote a letter to the plaintiff advising that there would be "no more guaranteeing of merchandise" and authorizing the plaintiff to return all merchandise by July 1, 1958. The letter further advised the plaintiff that any merchandise received from it after that date would be "scrapped and no credit issued." On April 16, 1958, the plaintiff returned a shipment of records having a cost of $1,528.80; on June 24, 1958, it returned records having a cost of $1,467; and on July 2, 1958, it returned records having a cost of $3,710.40. The first two shipments were received by the defendant before July 1, 1958, but the last shipment was received by it on July 8, 1958. None of these shipments carried the authorized return labels. As a consequence, they were delayed at the defendant's warehouse until the defendant could contact its Jacksonville office to ascertain what had been returned. As a further consequence, the defendant made a bookkeeping error and issued to the plaintiff a credit memorandum for the shipment received on July 8, 1958, instead of for the first two shipments, which had been received before July 1st. *755 In September of 1958 the plaintiff wrote to the defendant requesting credit memoranda for the first two shipments, and the defendant replied on October 6th that such returns had been refused by it "as they were not made within the time specified by Mr. Leiber." The next day the plaintiff replied denying that the records had been refused. Later the plaintiff made further demands for credit memoranda for the first two shipments. Nevertheless, the defendant did not discover its mistake in issuing the credit memorandum for the shipment received on July 8th until the plaintiff had filed the present action and had filed its motion for summary judgment. This error in issuing the credit memorandum for the July shipment was mentioned to the plaintiff for the first time in an affidavit filed on September 9, 1959. Upon discovering the error, the defendant issued credit memoranda to the plaintiff for the two shipments received before July 1st and, with leave of court, filed a counterclaim against the plaintiff in the action for the amount of the July shipment less the amount of the credits for the first two shipments.
In the summary judgment appealed from the court stated that the only question for determination was whether the defendant may now recover the amount of the credit memorandum issued for the July shipment because the shipment was seven days late in being received. The court then invoked the rule that even a valid condition may be waived by a promisor if, after its defective performance, he continues to recognize the existence of the contract or if he retains its benefits for an unreasonable time after he knows or should have known that the performance was defective The court then pointed out that the defendant had accepted the records returned by the plaintiff and had retained them for over a year, had not offered to return them or given the plaintiff an opportunity to secure their return; that the defendant not only accepted and retained the benefits of the plaintiff's performance but it recognized the continued existence of its duty by issuing its credit memorandum for the records returned to it. The court then held that, absent the question of mistake, there would be no doubt that the time limitation was waived by the defendant and that it could no longer rely on the fact that the goods were received seven days late. On the question of mistake the court held that the defendant had had ample opportunity and incentive to discover the error of issuing the credit memorandum for the July shipment and to take such action as might have been necessary to cancel that credit memorandum without at the same time working a forfeiture of the plaintiff's property. The court then held that, by failing to take such action for a period of more than a year following the time the mistake was made, "it waived its right to cancel the memorandum, notwithstanding the mistake." The finding of the court was that there was no genuine issue of material fact and that the plaintiff was entitled to a judgment as a matter of law both on its complaint and on the defendant's counterclaim. The court then awarded damages in the amount of $2,508, the total of the cost of the shipments returned on April 16, 1958, and June 24, 1958, together with interest and costs. The defendant then took the present appeal from this summary judgment.
The sole objection pressed by the appellant on appeal is as to that part of the summary judgment ruling in the plaintiff's favor on the defendant's counterclaim. We will confine our consideration to that ruling, for the court was clearly correct in holding that the plaintiff was entitled to recover for the two shipments made and received prior to July 1, 1958. It is clear as a matter of law that the plaintiff was entitled under the contract with the defendant to credit memoranda for those two shipments. A jury could not lawfully have made any other inference from the evidence before the court. These two shipments, however, were on an entirely different basis from that of the shipment made and received *756 after July 1, 1958, for such a shipment was specifically excluded from the guaranty provision under the contract as amended.
The basic question before us on this appeal, therefore, is whether there was before the court at the hearing on the plaintiff's motion for summary judgment sufficient competent, substantial evidence from which a jury could have lawfully found in favor of the defendant on its counterclaim against the plaintiff. It is, of course, immaterial whether the evidence is uncontroverted if the evidence is susceptible of two or more inferences of fact that could be lawfully made by a jury, one of which inferences would provide a basis for the jury to hold against the party moving for the summary judgment. Applying this rule as thus expressed to the situation in the case before us, we cannot agree that the defendant as a matter of law waived its right under the contract as amended not to give credit for merchandise received by it from the plaintiff after July 1, 1958. Certainly the evidence was sufficient to permit a jury to infer waiver on the part of the defendant, but it was also legally susceptible of an inference by the jury that there was no such waiver. This is one of many frequent instances in which a summary judgment may not be entered on a claim even though the evidence is uncontroverted, for the reason that one cannot correctly say that there is "no genuine issue as to any material fact," a prerequisite to the entry of a summary judgment under our rules, where the evidence, though uncontroverted, is susceptible to two or more inferences of fact by a jury, one of which inferences would preclude the entry of a judgment for the movant as a matter of law.
As the Supreme Court of Florida recognized in the case of Rutig v. Lake Jem Land Co., 1945, 155 Fla. 420, 20 So.2d 497, 499, "* * * the question of waiver is usually one of fact for consideration by a trial jury on issues properly defined."
The summary judgment appealed from, therefore, is affirmed as to that part ruling in favor of the plaintiff on its complaint against the defendant but reversed as to the part ruling in the plaintiff's favor on the defendant's counterclaim, and this cause is remanded for further proceedings consistent herewith.
Affirmed in part and reversed in part.
WIGGINTON, C.J., and STURGIS, J., concur.